# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JOAN L. WALTER,

    *Plaintiff,*

vs.

Case No. 16-2200-EFM

NANCY BERRYHILL, Acting Commissioner of Social Security,[1]

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Joan Walter seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits under Title II of the Social Security Act. Walter alleges that the administrative law judge ("ALJ") erred (1) in assessing her residual functional capacity ("RFC"), (2) by posing an inadequate hypothetical question to the vocational expert and relying on the flawed testimony, and (3) in finding that she was not entirely credible. Having reviewed the record, and as described below, the Court reverses the order of the Commissioner.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d).

## I.     Factual and Procedural Background

Joan Walter was born on August 8, 1958.  On May 8, 2013, Walter applied for disability and disability insurance benefits alleging a disability beginning on October 8, 2008.  She alleged that she was unable to work due to several disorders including fibromyalgia, chronic fatigue, and osteoarthritis.  Walter's application was denied initially and upon reconsideration.  She then asked for a hearing before an ALJ.

ALJ Janice Barnes-Williams conducted an administrative hearing on September 8, 2014.  Walter was represented by counsel, and Walter testified about her medical conditions.  The ALJ also heard from a vocational expert.

On November 24, 2014, the ALJ issued her written decision, finding that Walter had not engaged in substantial gainful activity since the alleged onset date.  The ALJ found that Walter suffered from status post cervical fusion with degenerative disc disease and radiculopathy, mild lumbar spondylosis with mild degenerative changes at the sciatic joint, and fibromyalgia.  The ALJ determined that Walter's impairment or combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that Walter had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and SSR 83-10.  She can lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to 6 hours in an 8-hour workday, and sit up to 6 hours in an 8-hour workday.  She requires a sit-stand option every 30 minutes; she can occasionally climb ramps and stairs but never climb ladders, rope, or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she can frequently reach, but needs to avoid overhead reaching; and she needs to avoid exposure to extreme cold, wetness (as it relates to weather conditions), and excessive vibration.

The ALJ then determined that Walter was unable to perform any of her past relevant work. However, considering Walter's age (advanced because she was 55 years old on the date last insured), education, work skills, and RFC, the ALJ determined that jobs existed in the national economy that Walter could still perform. Thus, the ALJ concluded that Walter had not been under a disability from October 8, 2008 (the alleged onset date), through June 30, 2014 (the date last insured).

Given the unfavorable result, Walter requested reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied Walter's request on January 29, 2016. Accordingly, the ALJ's November 2014 decision became the final decision of the Commissioner.

Walter filed a Complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision. Because Walter has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

reasonable mind might accept to support the conclusion."[4] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of

---

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[11]

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[13] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[14]

### III. Analysis

Plaintiff alleges that the ALJ erred (1) in assessing her RFC, (2) by posing an inadequate hypothetical question to the vocational expert and relying on the flawed testimony, and (3) in finding that she was not entirely credible. The Court will only address Plaintiff's first contention.

---

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id.*

"Residual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations."[15] Under Social Security Ruling 96-8p, an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."[16] In addition, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence in the case record.[17] An ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[18] However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[19]

In this case, Plaintiff's treating physician, Dr. Cahill, stated that Plaintiff could sit and stand two hours in an eight-hour workday and that she could only occasionally perform fine manipulation, gross manipulation, and reaching. The ALJ afforded little weight to Dr. Cahill's opinion. Instead, the ALJ determined that Plaintiff could stand and/or walk up to six hours in an eight-hour workday and sit up to six hours. With regard to Plaintiff's arm movements, the RFC provided that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. In addition,

---

[15] *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001) (citing 20 C.F.R. § 416.945(a),(b),(c)).

[16] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[17] *Id.*

[18] *Id.*

[19] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

the ALJ found that Plaintiff could frequently reach but needed to avoid overhead reaching. The ALJ did not provide any manipulation limitations.

Plaintiff asserts that the ALJ erred in giving little weight to Dr. Cahill's opinion and thus erred in assessing her RFC. Specifically, Plaintiff contends that the ALJ failed to include Dr. Cahill's limitations that Plaintiff could only perform fine manipulation, gross manipulation, and reaching "occasionally" up to one-third of the eight-hour workday. As noted by Plaintiff, the ALJ did not address or even acknowledge these stated reaching and manipulation limitations. Furthermore, as Plaintiff points out, Social Security Ruling 85-15 provides:

> Reaching … and handling … are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational expert] may be needed to determine the effects of the limitations. … As a general rule, limitations of fine manual dexterity have greater adjudicative significance—in terms of relative numbers of jobs in which the function is required—as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work.[20]

Thus, reaching and manipulation considerations appear to be an important consideration when determining a plaintiff's RFC and the jobs available.

The ALJ has a duty to consider all the medical opinions in the record and discuss the weight assigned to each opinion.[21] "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."[22] If the treating physician's

---

[20] SSR 85-15, 1985 WL 56857, *7 (Jan. 1, 1985).

[21] *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (citation omitted).

[22] *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks and citation omitted).

opinion is not entitled to controlling weight, the ALJ still must determine what weight, if any, to assign to the opinion by considering the factors listed at 20 C.F.R. § 404.1527.[23] These factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors.[24] The ALJ must give good reasons for the weight she assigns to the treating physician's opinion and must give specific, legitimate reasons if she completely rejects the opinion.[25] The ALJ is not required to expressly discuss each factor, but the reasons stated must be "sufficiently specific" to allow meaningful review.[26] Generally, the ALJ should give more weight to opinions from treating sources over the opinions of other medical professionals.[27] If a treating source opinion is not given controlling weight, it is still entitled to deference.[28] In addition, the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[29]

In the Commissioner's brief, the Commissioner attempts to tie all the underlying evidence together. The Commissioner explains in detail that Dr. Coleman's findings and opinion were supported by the "objective medical evidence." Specifically, the Commissioner asserts that the ALJ reasonably concluded that Dr. Coleman's findings were more consistent with Plaintiff's RFC findings than the findings of Plaintiff's treating physician, Dr. Cahill.

---

[23] *Id.* at 1176-77.

[24] 20 C.F.R. § 404.1527(c)(2)-(6).

[25] *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citations omitted).

[26] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350 F.3d at 1300).

[27] 20 C.F.R. §§ 404.1527(c).

[28] *Watkins*, 350 F.3d at 1300 (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).

[29] SSR 96-2p, 1996 WL 374188, at *5.

The issue, however, is that the ALJ never discussed Dr. Coleman's findings or opinion in her order. Thus, the Court does not have the ability to determine whether the Commissioner's assertion that the ALJ properly discounted Dr. Cahill's opinion in favor of Dr. Coleman's is correct. Indeed, this argument appears to be a post-hoc justification of the evidence. "[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."[30]

Here, the ALJ stated that she gave little weight to Plaintiff's treating physician's opinion. The opinion did not discuss the above factors for assigning little weight to the treating physician's opinion or in determining the amount of deference given to the opinion. Although the ALJ need not formally and exhaustively review all of the factors concerning a medical opinion from a treating physician, the ALJ's decision should provide for meaningful review on the issue. Furthermore, the ALJ never discussed Dr. Coleman's opinion so it would appear that Dr. Coleman's opinion was not given any weight which would be contrary to the Commissioner's statements in her brief to this Court.

As noted above, this Court's job is not to reweigh the evidence or substitute its judgment for that of the Commissioner.[31] Instead, the Court must review the record to determine if substantial evidence supports the ALJ's decision and whether the ALJ sufficiently articulated the reasons to provide for meaningful review.[32] Here, the Court cannot conclusively determine that the ALJ erred in her RFC assessment, as Plaintiff contends, but rather, the Court finds that the

---

[30] *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

[31] *Bowman*, 511 F.3d at 1272 (citing *Casias*, 933 F.3d at 800).

[32] *Lax*, 489 F.3d at 1084.

evidence and reasons set forth in the ALJ's opinion do not allow for meaningful review of the RFC.  For this reason, the Court must reverse the Commissioner's decision.

Plaintiff requests that the Court reverse the decision with directions to the Commissioner for an immediate award of disability insurance benefits.  In some cases, an immediate award of benefits is appropriate.[33]  However, "remand is more appropriate when the administrative record has not been fully developed, or where the ALJ makes minimal findings that are not supported by adequate evaluation of the evidence in the record."[34]  Therefore, the Court concludes that it is more appropriate to reverse and remand.  Upon remand, the ALJ should adequately discuss the evidence relating to Plaintiff's RFC, particularly with regard to Plaintiff's treating physician findings.[35]

---

[33] *See Williams*, 844 F.2d at 760.

[34] *Higgins v. Barnhart*, 294 F. Supp. 2d 1206, 1215 (D. Kan. 2003) (citing *Taylor v. Callahan*, 969 F. Supp. 664, 673 (D. Kan. 1997)).

[35] The Court does not reach Plaintiff's second point of error that the ALJ erred in the hypothetical posed to the vocational expert.  Should Plaintiff's RFC change upon remand, the hypothetical would change as well.  The Court also finds it unnecessary to consider Plaintiff's third point of error that the ALJ erred in finding Plaintiff credible.  The Court simply notes that "[c]redibility determinations are peculiarly the province of the finder of fact," and will not be overturned when supported by substantial evidence.  *Wilson*, 602 F.3d at 1144.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **REVERSED**, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

Dated this 21st day of March, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE